IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BALDWIN G. BURR,

        Plaintiff,

  vs.                                            No. Civ. 98-1546 SC/DJS

REGENTS OF THE UNIVERSITY OF
NEW MEXICO; ALICE LETTENEY,
Executive Director of University of
New Mexico, Valencia Campus,
individually and in her official capacity;
REINALDO GARCIA,
Dean of Instruction of University
of New Mexico, Valencia Campus,
individually and in his official capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds, filed April 29, 1999 [Doc. No. 16]. Defendants' motion is pursuant to Fed. R. Civ. P. 12(b)(6) – dismissal for failure to state a claim upon which relief can be granted. The Court, having read the motion and memoranda, and being apprised of the applicable law, concludes that, for the reasons set forth below, Defendant's motion to dismiss is not well-taken.

## I. STANDARD OF REVIEW - FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS

Granting a motion to dismiss for failure to state a claim "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 586-87 (10th Cir. 1994) (internal quotations omitted); see Ayala v. Joy Mfg. Co., 877 F.2d 846, 847-48 (10th Cir. 1989). When ruling on a Rule 12(b)(6) motion, a court must construe the plaintiff's complaint liberally and all well-pleaded allegations in the complaint must be accepted as true. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998). A claim may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989).

## II. BACKGROUND

Plaintiff's complaint is for civil rights violations arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution. Plaintiff seeks damages and injunctive relief. Discovery has been stayed pending my ruling on Defendants' motion.

In December 1997, Plaintiff was informed his teaching contract for the 1998-1999 school year would not be renewed. At the time of his dismissal, Plaintiff had worked for the Valencia Campus of the University of New Mexico for approximately ten years, pursuant to consecutive one-year renewable contracts. In April 1997, Plaintiff's supervisor had recommended renewal of his contract for the 1998-1999 school year.

At all relevant times, Plaintiff was a full-time lecturer at the Valencia Campus. He taught in the Computer Information Systems Department (CIS), the Fine Arts Department, the Media Arts Department, the Journalism Department, the Education Department, and the Family Studies Department. During his tenure at the Valencia Campus, Plaintiff was consistently rated, evaluated, and recognized as one of the best teachers. From 1991 to 1997, Plaintiff was consistently and formally recognized as an "Excellent Instructor," the highest ranking for teachers at the Valencia Campus. The student body, based on formal nomination and majority vote, named him "Instructor of the Year" for 1996-1997. Campus faculty members twice elected him Faculty Assembly President.

In the 1990s, Intel Corporation solicited Valencia Campus, among other New Mexico educational institutions, to establish "Semiconductor Manufacturer Technology" programs for the training of semiconductor technicians. In 1996, the Valencia Campus was considering whether to develop a training program in accordance with Intel's request. Implementation of such a program required approval of the Curriculum Committee. On

April 8, 1996, the Curriculum Committee met in open session. The issue of the proposed semiconductor training program was on the agenda and was debated.

The head of the CIS department and Plaintiff's supervisor, Diana Cole, requested Plaintiff, who had extensive experience in CIS curriculum development, to attend the April 8 Curriculum Committee meeting and contribute to the discussion of the proposed semiconductor program. Plaintiff attended the meeting and told the Committee that he did not support the proposed program. Plaintiff explained that he believed Valencia Campus students were not necessarily going to obtain Intel jobs and, if they did not obtain Intel jobs, that their semiconductor training might be unmarketable elsewhere in the area. Plaintiff further observed that Intel might be hoping that the Valencia Campus would supply a glut of semiconductor manufacturing specialists, thus lowering Intel's labor costs. Plaintiff also stated that not only was he concerned that the proposed program would be a limited-employer training program, fundamentally for the benefit of Intel, but the proposed program would over-tax the teaching resources of the CIS Department. Plaintiff stated that the resources of the Valencia Campus were finite and committing the considerable resources necessary to staff, supply, and administer the Intel program would inevitably necessitate undesirable cuts in other computer disciplines. Plaintiff further observed that students may be unable to finish the proposed course of study within the two-year period of CIS programs. Finally, Plaintiff objected to what he viewed as misleading flyers and other publicity concerning the proposed program – that any student who completed the program would be all but guaranteed a $30,000/year job.

Plaintiff stated that if the proposed program was implemented, the CIS Department should exact written assurances from Intel that the required program hardware and software resources would be provided and that students who satisfactorily completed the program actually would obtain jobs.

Because Plaintiff spoke out against the proposed semiconductor program, in 1996-1998, Defendants engaged in a campaign of harassment and retaliation, culminating in the non-renewal of his contract as an instructor at the Valencia Campus, and, in April 1998, veiled accusations against him in a faculty newsletter.

## III. MOTION TO DISMISS

Defendants argue that, even assuming Plaintiff's allegations are true, Plaintiff has failed to state a claim upon which relief may be granted because the speech allegedly engaged in by Plaintiff did not relate to matters of public concern and, thus, was not protected by the First Amendment. Defendants further contend that even if Plaintiff's alleged speech was protected by the First Amendment, they are protected by qualified immunity because there was no clearly established law in the Tenth Circuit placing them on notice that their alleged conduct was unlawful.

Plaintiff responds that his speech was a matter of public concern and protected by the First Amendment. Plaintiff further contends that Defendants are not entitled to qualified immunity because, at the time of their conduct, their actions were clearly unconstitutional.

5

### A. First Amendment

Government "employees may not be dismissed in retaliation for lawful exercise of [F]irst [A]mendment freedoms." Ware v. Unified Sch. Dist. No. 492, 902 F.2d 815, 819 (10th Cir. 1990) (internal quotation marks omitted); see Connick v. Meyers, 461 U.S. 138, 142 (1983). The Supreme Court has adopted a multi-tiered test to evaluate a public employee's claim that his First Amendment rights have been violated by his government employer. See Martin v. City of Del City, 179 F.3d 882, 886 (10th Cir. 1999). A court's initial query under this test is whether the speech in question can be fairly characterized as addressing or touching upon a matter of public concern. See Connick, 461 U.S. at 146. If this is so, the court must then balance the employee's interest in expression against the interest of the government in regulating employee speech in order to maintain an efficient and effective workplace. See Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). If the balancing favors the employee, he must show the constitutionally protected speech was a substantial or motivating factor for the challenged governmental action. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Finally, if the employee satisfies the above elements, the burden shifts to the government employer to show by a preponderance of the evidence that the same action would have taken place in the absence of the protected conduct. See id. Only the first element – whether the speech in question was of "public concern" – is contested by Defendants in their motion to dismiss.

The Supreme Court broadly defines what constitutes speech of public concern. See Luethje v. Peavine Sch. Dist., 872 F.2d 352, 355 (10th Cir. 1989); see also Roe v. City and County of San Francisco, 109 F.3d 578, 585-86 (9th Cir. 1997); Dishnow v. School Dist., 77 F.3d 194, 197 (7th Cir. 1996). Matters of public concern are those matters fairly considered to be of interest to the community, whether for social, political, or other reasons. See Connick, 461 U.S. at 146. "In contrast, matters of only personal interest to government employees are not protected by the First Amendment." Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir. 1998); see Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement . . ., as revealed by the whole record." Rankin v. McPherson, 483 U.S. 378, 385 (1987) (internal quotations omitted); see Copp v. Unified Sch. Dist. No. 501, 882 F.2d 1547,1552 (10th Cir. 1989).

Contrary to Defendants' contentions, Plaintiff's speech at the public Curriculum Committee meeting did not "involve essentially a private matter." Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988). His speech did not pertain to internal personnel disputes, his job performance, working conditions, or internal policies relevant only to campus personnel. See Gardetto, 100 F.3d at 812; Bunger v. University of Okla. Bd. of Regents, 95 F.3d 987, 992 (10th Cir. 1996). Plaintiff's expression also was not "motivated solely by personal interest in his employment or by hostility, but was primarily for the purpose of informing" the Committee and the public of the ability of the

Valencia Campus to discharge the public function of education and of what he perceived to be a possibly poor allocation of resources. Conaway, 853 F.2d at 796; see Cox v. Dardanelle Pub. Sch. Dist., 790 F.2d 668, 673 (8th Cir. 1986); see also Gardetto, 100 F.3d at 813, 814. Furthermore, the cases cited by Defendants in support of their position are inapplicable to this action – the speech in question was not in-class conduct nor was Plaintiff choosing his own curriculum in contravention of school policy or dictates or without taking advantage of established administrative processes to review curriculum decisions. See, e.g., Edwards v. California Univ. of Pa., 156 F.3d 488 (3d Cir. 1998), cert. denied, __ U.S. __, 119 S.Ct. 1036 (1999); Kirkland v. Northside Indep. Sch. Dist., 890 F.2d 794 (5th Cir. 1989).

Rather, Plaintiff's speech had a broader public purpose. Plaintiff was participating, at his supervisor's request, "in a public dialogue on matters of interest to the public." Dishnow, 77 F.3d at 197; see Copp, 882 F.2d at 1552; see also Edwards, 156 F.3d at 491 ("Edwards has a right to advocate outside of the classroom for use of certain curriculum materials. . . ."); Gardetto, 100 F.3d at 813 ("speech about the use of public funds touches upon a matter of public concern") (internal citations omitted);[1]  A branch of a public university exists to serve the local community. Such an institution has

---

[1] The Tenth Circuit in Gardetto also stated that "details of internal budgetary allocations at an institution of public education are not matters of public concern." Gardetto, 100 F.3d at 814; see id. at 815. This conclusion in Gardetto, however, is distinguishable from the case at bar on the facts, such as the differences between the content, form, and context of the speech. For example, unlike the employee in Gardetto, Plaintiff spoke, at the request of his supervisor, at an open meeting at which the implementation of the proposed Intel program was to be debated. Additionally, unlike in Gardetto, at the time of Plaintiff's speech his personal employment or the employment of other faculty members was not at issue.

8

limited resources and must pick and choose carefully which courses and programs it offers. It is of community interest how those finite resources are to be allocated, which programs of study are to be offered, and how a potential labor force is to be educated. It also is of community interest when a large private corporation requests that the institution offer a specific program of study which would benefit the corporation. The public also may have a keen interest in such a corporate request, and in the institution's decision whether to reallocate resources and implement the proposed program, when the program may not benefit the community or the institution's students. "[G]overnment employees cannot be compelled to give up their First Amendment right to 'comment on matters of public interest in connection with the operation of the public schools in which they work,'" Luethje, 872 F.2d at 355 (quoting Pickering, 391 U.S. at 568). Furthermore, "[t]eachers are . . . the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory discharge." Pickering, 391 U.S. at 572; see Gardetto, 100 F.3d at 813, 814.

Therefore, because Plaintiff's speech "concerned information in which the public would definitely be interested," Conaway, 853 F.2d at 796, I conclude that Plaintiff's statements before the Curriculum Committee constituted speech touching upon matters of public concern and were protected under the First Amendment.

9

### B. Qualified Immunity

Special rules are applied when a defendant raises the defense of qualified immunity. "Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant law was clearly established when the alleged violation occurred." Migneault v. Peck, 158 F.3d 1131, 1139 (10th Cir. 1998), petition for cert. filed, 167 U.S.L.W. 3496 (U.S. Jan. 20, 1999) (No. 98-1178); see Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In showing that the law was clearly established, the plaintiff does not have to show that the specific action at issue had been held unlawful, but the alleged unlawfulness of the defendant's conduct must be apparent in light of preexisting law." Armijo v. Wagon Mound Public Sch., 159 F.3d 1253, 1260 (10th Cir. 1998); see Migneault, 158 F.3d at 1139. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. To show a right is clearly established, there must be Supreme Court or Tenth Circuit law on point, or the weight of authority from other courts must support the Plaintiff's proposition. See Armijo, 159 F.3d at 1260; Migneault, 158 F.3d at 1139-40. Unless both prongs of the test are satisfied, qualified immunity must be granted. See Migneault, 158 F.3d at 1139.

Plaintiff has satisfied his dual burden under Migneault and Anderson. As discussed above in the First Amendment analysis, Defendants' alleged conduct violated Plaintiff's First Amendment rights. Additionally, in 1996-1998, as illustrated by the

caselaw cited above, it should have been apparent to Defendants that such conduct was unlawful.  See, e.g., Connick, 461 U.S. 138; Pickering, 391 U.S. 563; Luethje, 872 F.2d 352.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds, filed April 29, 1999 [Doc. No. 16], should be, and is hereby, DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: Jeffrey J. Buckels, Albuquerque, New Mexico, and Andrew M. Vallejos, Albuquerque, NM

Counsel for Defendant: Elizabeth L. German, BROWN & GERMAN, Albuquerque, NM